IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| MARIA WILLIAMS-BELL, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) Case No.: 1:14-cv-1002 ) |
| v. | ) Judge Joan B. Gottschall ) |
| PERRY JOHNSON REGISTRARS, INC. and TERRY BOBOIGE | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AND/OR COMPEL ARBITRATION**

Plaintiff, MARIA WILLIAMS-BELL, individually and on behalf of all other similarly situated employees, by and through her counsel, responds to Defendants' motion to dismiss and/or compel arbitration and states as follows:

**I.    INTRODUCTION**

Plaintiff does not dispute that the Arbitration Agreement ("Agreement") is enforceable. The only remaining issue is whether the Agreement allows the parties to arbitrate class claims. Because this is a procedural question, the arbitrator, not the court, should decide whether the Agreement provides for class arbitration. Additionally, the Agreement here memorializes the Parties' intent to arbitrate class and collective action claims because it says so. Specifically, the Agreement provides that <u>all</u> <u>disputes</u> between the Parties "shall be submitted for binding arbitration before the American Arbitration Association (AAA), and pursuant to the rules and guidelines of the AAA." (Dkt. No. 12-1 at ¶9.2) [1] Accordingly, this Court should compel

---

[1] Plaintiff agrees with Defendants that this clause is <u>extremely</u> <u>broad.</u> (*See* Defendants' motion at Dkt. No. 12 at Pg. 6 stating "the arbitration clause in this case is extremely broad and requires arbitration of 'dispute[s] between Contractor and PJR.'")

Plaintiff's claims to arbitration for an arbitrator to decide questions of procedural arbitrability – namely whether the Agreement allows class and collective actions.

## II. ARGUMENT

### A. Whether the Agreement Permits Class Arbitration is a Question of Procedural Arbitrability for an Arbitrator to Decide.

Although the Seventh Circuit has not directly addressed the question of whether the arbitrability of class claims is a question for a court or an arbitrator to decide, Courts in the Northern District of Illinois have. (*See Collier v. Real Time Staffing Services Inc.*, holding that question of class arbitrability is a procedural issue to be resolved by an arbitrator (No. 11 C 6209, 2012 WL 1204715, at *5 (N.D. Ill. Apr. 11, 2012) (Lefkow, J)); *See Price v. NCR Corporation*, holding that whether an arbitration agreement allows parties to arbitrate class claims is a procedural issue to be resolved by an arbitrator (No. 12 C 3413 at *15 (N.D. Ill. December 10, 2012) (Castillo, J)); *See Chatman v. Pizza Hut, Inc*., denying Defendant's motion to compel arbitration on an individual basis, leaving for decision by the arbitrator the question of class arbitrability (No. 12 C 10209 (N.D. Ill. May 23, 2013) (Schenkier, J)).

Moreover, Seventh Circuit precedent addressing consolidated arbitration is instructive here. In *Employers Insurance Co. of Wausau v. Century Indemnity Co*., the Seventh Circuit held that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve." 443 F. 3d at 577. Relying on *Howsam v. Dean Witter Reynolds, Inc.*, the Seventh Circuit held that the dispute about consolidated arbitration was not a dispute about substantive arbitrability – the parties agreed that the arbitration clause was valid and that their underlying dispute was subject to arbitration – but rather about procedural arbitrability, or "the kind of arbitration proceedings the parties agreed

2

to." *Id.* at 578-579 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. at 453) (citing *Howsam*, 537 U.S. at 85.)

Finally, the Parties here have agreed that an arbitrator should interpret the Agreement. Specifically, the Agreement itself provides that disputes shall be submitted to AAA "pursuant to the rules and guidelines of the AAA." (Dkt. No. 12-1 at ¶9.2) The AAA Supplementary Rules for Class Arbitrations were enacted on October 8, 2003 and amongst other things provide "upon appointment, the arbitrator shall determine as a threshold matter… whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award")." (Ex. A – AAA Supplementary Rules for Class Arbitration at ¶3) By adopting AAA Supplementary Rule 3 in their Agreement, the Parties agreed that an arbitrator, not this Court, would determine whether the Agreement allows class arbitration. For all these reasons, this Court should stay Plaintiff's claims and compel arbitration leaving the issue of class arbitration for the arbitrator to decide.

**B.     The Agreement is Extremely Broad and Requires the Plaintiff to Arbitrate All Disputes.**

If this Court decides the clause construction issue on its own, rather than allowing the arbitrator to make this decision, it should compel arbitration on a class-wide basis. That is because the Agreement authorizes Plaintiff to arbitrate class and collective actions. The Plaintiff signed this contract of adhesion and in it, the parties agreed to arbitrate all "disputes between the Contract and PJR" arising out of Plaintiff's work for Defendants. Further, the Agreement expressly does not limit *any* legal remedies available to Plaintiff. A long line of cases interpreting arbitration agreements in accordance with the United States Supreme Court's decision in *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,* including the Third Circuit's decision in *Sutter v. Oxford Health Plans LLC*, are directly on point and recognize that this type of broad language

3

requiring parties to arbitrate "any claims" or "all disputes" manifests an agreement to arbitrate class and collective actions. Thus, under this consistent line of cases, the Agreement's express language permits Plaintiff to bring class and collective actions in arbitration.[2]

As explained in *Sutter*, "*Stolt-Nielsen* did not establish a bright line rule that class arbitration is allowed only under an arbitration agreement that incants 'class arbitration' or otherwise expressly provides for aggregate procedures." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222 (3d Cir. 2012) (citing *Stolt-Nielsen*, 130 S.Ct. at 1776 n.10) ("We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration. Here, as noted, the parties stipulated that there was 'no agreement' on the issue of class-action arbitration"). Rather, *Stolt-Nielsen* merely "established a default rule under the Federal Arbitration Act: '[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.'" *Id*. (quoting *Stolt-Nielsen*, 130 S.Ct. at 1775 (emphasis in original). But it also made it clear that, in determining whether an arbitration agreement addresses the right to proceed on a class basis, an arbitrator can look to "the arbitration agreement itself or some background principle of contract law that would affect its interpretation." *AT&T Mobility*, 131 S.Ct at 1750 (emphasis added) (citing *Stolt-Nielsen*, 130 S.Ct. 1758). Thus, *Stolt-Nielsen* recognized that arbitration agreements can expressly or implicitly permit class actions.

Here, the Arbitration Agreement requires the parties to arbitrate all "dispute[s] between contractor and PJR." (Dkt. No. 12-1 at ¶9.2). Pursuant to applicable rules of contract

---

[2] At the very least, the Agreement is ambiguous with respect to whether the parties intended to permit class and collective actions in arbitration. Under ordinary contract rules of construction, that ambiguity must be decided in favor of Plaintiff and against Defendants as the drafters. *See Duldalao v. St. Mary of Nazareth Hosp. Ctr.,* 505 N.E. 2d, 314, 319 (1987); *Thompson v. Amoco Oil Co.* 903 F. 2d 1118 (7th Cir. 1990)

construction, the only proper interpretation of an agreement to arbitrate all disputes is that the parties agreed to arbitrate any possible claims, including class and collective action claims.[3]

This contract interpretation is further bolstered by the fact that the Arbitration Agreement explicitly requires the parties to follow the Rules of the American Arbitration Association: "[a] single arbitrator engaged in the practice of law from the American Arbitration Association ('AAA') shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes ('Rules')." (Ex. A). AAA's Rules explicitly provide for class actions. *See* AAA Supplementary Rules for Class Arbitrations, effective October 8, 2003, Rule 3. (*Id*.)

If Defendants had intended the arbitration agreement to exclude class or collective actions, it easily could have stated that in the Arbitration Agreement. However, the Agreement contains no such exclusion. Rather, Defendants went out of its way to include other provisions such as requiring the agreement to be interpreted in accordance with the laws of the State of Michigan. (Dkt. No. 12-1 at ¶9.2). Simply stated, there is nothing in this Agreement that limits any statutory remedy to which the Plaintiff may be entitled under law.

---

[3] The United States Supreme Court has recognized that the plain language of a broad arbitration provision agreeing to "settle all disputes" between the parties permits all forms of relief that would have been available if the action were brought in court, as follows:

> Were we to confine our analysis to the plain language of the arbitration clause, we would have little trouble concluding that a contract clause which bound the parties to 'settle all disputes' through arbitration conducted according to rules which allow any form of 'just and equitable' `remedy of relief' was sufficiently broad to encompass the award of punitive damages. Inasmuch as agreements to arbitrate are 'generously construed,' it would seem sensible to interpret the 'all disputes' and 'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute resolvers to award the same varieties and forms of damages or relief as a court would be empowered to award. Since courts are empowered to award punitive damages with respect to certain types of claims, the Raytheon-Automated arbitrators would be equally empowered.

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 61 (1995) (emphasis added) (internal citation and quotation marks omitted).

Last year, in *Sutter v. Oxford Health Plans LLC*, the Third Circuit affirmed a ruling that a similarly broad arbitration agreement permitted class and collective actions in arbitration even though there was no express reference to class or collective actions in the agreement. *Sutter,* 675 F.3d at 223. [4] The relevant arbitration clause in *Sutter* stated that:

> No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and <u>all such disputes</u> shall be submitted to final and binding arbitration in New Jersey, pursuant to the Rules of the American Arbitration Association with one arbitrator. Id. at 223 (emphasis added). The Third Circuit affirmed the Arbitrator's ruling that this language "embraces all conceivable court actions, including class actions."

*Id.* at 218, 233. [emphasis added] The language of the Arbitration Agreement here is similar to the one in *Sutter*, making for a compelling case to find that the parties agreed to arbitrate class and collective actions. Like this case, the agreement in *Sutter* states that the parties agreed to arbitrate <u>disputes</u> arising under the arbitration agreement.

The Second Circuit Court of Appeals has followed the same path and reversed a district court which had held that a similar broadly-worded arbitration provision somehow precluded class arbitrations. *Jock v. Sterling Jewelers Inc*., 646 F.3d 113 (2d. Cir. 2011). In *Jock*, the relevant provision was that the parties had to arbitrate "any dispute, claim, or controversy ("claim") … regarding any alleged unlawful act regarding my employment or termination of my employment which could have otherwise been brought before an appropriate government or administrative agency or in a[n] appropriate court …" *Id.* at 116-17 (emphasis added).

The Second Circuit concluded that the lower court incorrectly vacated the Arbitrator's conclusion based on its misinterpretation of *Stolt-Nielsen*. *Id*. at 117. The Court emphasized that the Arbitrator properly discerned the parties' intent by applying state law rules of contract

---

[4] In *Oxford Health Plans, LLC v. Sutter*, the United States Supreme Court held that, as long the arbitrator attempted to interpret the arbitration agreement, a court cannot overturn his ruling on the basis that he exceeded his authority. In other words, the Supreme Court held it is irrelevant to whether the arbitrator interpreted the agreement correctly, even if the arbitrator made a serious error when he interpreted it.

6

construction. *Id*. at 117, 126. It also relied on the fact that "[the] contract was drafted by [the employer] and was not the product of negotiation, [therefore] it was incumbent on [the employer] to ensure that all material terms, especially those adverse to the employee, were clearly expressed." *Id*. at 117. Ultimately, the Second Circuit upheld the Arbitrator's ruling that denying the employees the right to pursue a class action would run contrary to the express language of the agreement, stating that "'the arbitrator has the 'power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction.'" *Id*. at 126. That language is indistinguishable from the broad language in the Agreement here.

Here, as in *Sutter, Jock* and the other cases cited above, a plain reading of the Agreement reveals that Defendants expansively used the broadest of terms to describe the scope of disputes covered. The Arbitration Agreement limitlessly applies to any and all "dispute[s]" between contractor and PJR." (Dkt. No. 12-1 at ¶9.2). If Defendants intended to exclude class and collective actions from any and all "disputes" it easily could have done so in the same manner. Plainly, its failure to do so manifests its intention to include all other possible disputes. Thus, the Agreement expressly authorizes class and collective actions in arbitration.

Furthermore, it is undisputed that Defendants required its other contractors to sign the same Arbitration Agreement as the one signed by the Plaintiff. Other putative class members likely signed the exact same Agreement as the one signed by the Plaintiff. In other words, Defendants' Agreement was not unique to the Plaintiff. Accordingly, Plaintiff and the other contractors who signed Defendants' Agreement, all have substantive rights to arbitrate their claims against Defendants. Just like the Third Circuit held in *Sutter* and the Second Circuit held in *Jock*, their claims should proceed on a collective and class wide basis because Defendants are

7

not being forced to arbitrate with anyone with whom it did not agree to arbitrate all "disputes" arising out of their work.

### III. CONCLUSION

For all the above reasons, Plaintiffs request that this Honorable Court stay the current case and compel her to pursue her claims through arbitration, leaving the determination of class arbitrability for the arbitrator. In the alternative, Plaintiff requests that this Honorable Court compel arbitration on a class-wide basis.

Dated: April 30, 2014                    Respectfully Submitted,


*/s/ Ryan F. Stephan*
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
www.stephanzouras.com

**ATTORNEYS FOR THE PLAINTIFFS**

8