IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA WILLIAMS-BELL, Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 14 C 1002 |
| v. | ) ) | Judge Joan B. Gottschall |
| PERRY JOHNSON REGISTARS, INC. and TERRY BOBOIGE, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria Williams-Bell contends that defendants Perry Johnson Registrars, Inc. ("PJR") and its President, Terry Boboige, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Illinois minimum wage law, 820 Ill. Comp. Stat. §§ 105, *et seq.* by improperly classifying her as an independent contractor. Williams-Bell filed suit on behalf of herself and all others who are similarly situated. The parties agree that William-Bell's individual claims must be arbitrated pursuant to a binding arbitration clause in a contract she signed relating to auditing work that she performed for PJR. However, the parties disagree regarding who – this court or an arbitrator – should decide whether the claims brought on behalf of putative class members are arbitrable.

The defendants ask the court to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P.12(b)(1) for lack of subject matter jurisdiction or Fed. R. Civ. P. 12(b)(3) for improper venue. Alternatively, they ask the court to compel arbitration of William-Bell's individual dispute and rule that the classwide arbitration is not available. Williams-Bell argues that the availability of classwide arbitration is a question for an arbitrator and that a stay of this case pending completion of arbitration – not dismissal – is the proper procedure when the court

compels arbitration. For the following reasons, PJR's motion to dismiss is denied in its entirety. In addition, the court compels arbitration of Williams-Bell's individual claims and finds that an arbitrator may decide if the class claims are arbitrable. Finally, the court stays this case pending completion of arbitration proceedings.

**I. BACKGROUND**

Defendant PJR audits organizations based on industry standards and registers the organizations if they meet or exceed the applicable standards. Defendant Boboige is PJR's President. PJR currently employs plaintiff Williams-Bell as a lead auditor. Williams-Bell previously worked for PJR as an auditor.

Williams-Bell alleges that PJR violated the FLSA, as well as Illinois minimum wage laws, by improperly classifying certain auditors as independent contractors. Williams-Bell thus contends that PJR owes overtime compensation and wages to her and other similarly situated individuals. Williams-Bell's complaint defines the proposed opt-in collective class of similarly situated persons as "[a]ll individuals who worked for Defendants, its subsidiaries or affiliated companies, as auditors and who were misclassified as independent contractors during the relevant statute of limitations period." Dkt. 1, Compl., ¶ 19.

PJR attached an employment agreement signed by Williams-Bell – which includes an arbitration clause – to its motion to dismiss. The complaint, however, does not allege that Williams-Bell or the other auditors who are members of the putative class signed employment agreements with PJR. The complaint also does not mention arbitration.

## II. ANALYSIS

The parties agree that Williams-Bell must arbitrate her individual claims. However, they disagree about the consequences of compelling arbitration (*i.e.*, if the court compels arbitration, should it dismiss this action or stay it pending completion of the arbitration proceedings?). They also disagree about the scope of the arbitration (*i.e.*, should the court compel arbitration of Williams-Bell's individual claim or allow the arbitrator to determine if he/she wishes to consider both Williams-Bell's individual claims as well as her claims on behalf of a class?).

### A.     PJR's Motion to Dismiss

PJR argues that because Williams-Bell agreed to arbitrate any claim against it, this case must be dismissed for lack of subject matter jurisdiction or improper venue, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(3), respectively. Williams-Bell, on the other hand, asserts that this case should be stayed pending completion of arbitration. For the reasons explained below, PJR's motion to dismiss based on lack of subject matter jurisdiction and improper venue is denied, and this action is stayed pending completion of arbitration proceedings.

#### 1.     The Employment Agreement Attached to PJR's Response

The court begins by determining if it may consider the employment agreement attached to PJR's motion to dismiss. Williams-Bell does not object to the submission of the agreement. Indeed, she agrees that she signed it. She also asserts (without directing the court to any supporting evidence) that all other similarly-situated auditors signed agreements containing the same arbitration clause. PJR did not file a reply, although the court afforded it an opportunity to do so. It thus did not dispute Williams-Bell's assertion that all of the members of the putative class are bound by the same arbitration clause.

"[I]t is well-settled that a court may look outside the complaint and consider other evidence when ruling on a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Casey v. Guthrie*, No. 09–CV–951, 2010 WL 1657387, at *1 n. 4 (S.D. Ill. Apr. 22, 2010). Similarly, when considering a Rule 12(b)(3) motion to dismiss for improper venue, the court may look at documents outside the pleadings. *ForteCEO Services, Inc. v. Terra Contracting, LLC*, No. 11 C 5179, 2012 WL 2597888, at *2 (N.D. Ill. July 3, 2012) (citing *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 809-10 (7th Cir. 2011)). The court will thus consider the employment agreement.

### 2. PJR's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The agreement includes a choice of law provision that states that it "shall be interpreted and enforced in accordance with the law of the State of Michigan." Dkt. 12-1, Employment Agmt., § 9.1. With respect to arbitration, it states:

> Contractor agrees that in the event of a dispute between Contractor and PJR, such dispute shall be submitted for binding arbitration before the American Arbitration Association (AAA), and pursuant to the rules and guidelines of the AAA. Judgment upon the arbitration award may be entered in a court of jurisdiction within the State of Michigan.

*Id*. at § 9.2.

As PJR stresses, some courts have dismissed federal actions for lack of subject matter jurisdiction when compelling arbitration based on a contractual agreement to arbitrate. In support, PJR directs the court's attention to *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008-09 (N.D. Ill. 2013), which collects cases holding that dismissal under Rule 12(b)(1) is proper when a claim is subject to arbitration. In that case, the court found that the claims were arbitrable. The plaintiff did not request a stay and the defendant moved to dismiss based on lack

of subject matter jurisdiction. The court compelled arbitration and granted the motion to dismiss based on lack of subject matter jurisdiction.

Critically, however, on appeal, the Seventh Circuit disagreed with this portion of the district court's ruling. *Johnson v. Orkin, LLC*, 556 Fed.Appx. 543, 544 (7th Cir. 2014). Specifically, the Seventh Circuit stated that the district court's reliance on Rule 12(b)(b)(1) was a "procedural misstep" because a party cannot forfeit or waive a federal court's power to hear a case. *Id*. The Seventh Circuit held that in contrast, a party can agree to a forum selection clause as that type of clause merely dictates the tribunal that is authorized to decide her lawsuit. *Id*. It then considered whether the case should have been dismissed for improper venue based on Fed. R. Civ. 12(b)(3) and affirmed the dismissal under that rule. *Id*.

*Johnson* teaches that when faced with a forum selection clause such as the one at issue in this case that requires the parties to arbitrate their disputes before the AAA, a court should not dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See id*. Accordingly, PJR's motion to dismiss based on lack of subject matter jurisdiction is denied.

**2.     PJR's Motion to Dismiss Based on Improper Venue**

If arbitration must occur in a forum outside the confines of the district in which the district court sits, dismissal based on improper venue is appropriate. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district"). In contrast, when an arbitration agreement "does not identify a specific arbitral forum," arbitration may proceed in a federal court, including in this court's district. *Hoenig v.*

*Karl Knauz Motors, Inc.*, No. 13 C 0866, — F. Supp. 2d —, 2013 WL 5701400, at *5 (N.D. Ill. Oct. 16, 2013) (citing 9 U.S.C. § 3).

Here, the agreement states that judgment on an arbitration award may be entered by a Michigan court. However, it does not identify a specific arbitral forum as the parties agreed to submit their disputes to "binding arbitration before the [AAA], and pursuant to the rules and guidelines of the AAA." Dkt. 12-1, Employment Agmt., at § 9.2. Thus, although the agreement allows a Michigan court to enter judgment on an arbitration award, it does not prevent arbitration from proceeding in this district. *See Hoenig*, 2013 WL 5701400, at *5.

PJR nevertheless asks the court to dismiss this case due to improper venue because the parties agreed to arbitrate their dispute. In contrast, Williams-Bell asserts that a stay pending completion of arbitration proceedings, rather than dismissal based on improper venue, is appropriate. The FAA holds the key to this disagreement as it provides that if a party seeks a stay, the court "shall" stay the action. 9 U.S.C. § 3. Specifically, the FAA states, in pertinent part that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.*(emphasis added). In this case, Williams-Bell asked for a stay. Given this request, a stay is proper pursuant to the FAA. *See id*.

This conclusion is not affected by PJR's emphasis on *Johnson* (the case discussed above in connection with PJR's motion to dismiss for lack of subject matter jurisdiction). In that case,

the Seventh Circuit approved dismissal based on improper venue when an arbitration clause covered the plaintiff's claims. Critically, however, the plaintiff in *Johnson* did not request a stay. Thus, the FAA's mandate that the court "shall on application of one of the parties stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement" when claims are "referable to arbitration" was not at issue. *See* 9 U.S.C. § 3; *see also Cramer v. Bank of America, N.A.*, No. 12 C 8681, 2013 WL 2384313, at *4 (N.D. Ill. May 30, 2013) (holding that dismissal based on improper venue is inappropriate when a plaintiff requests a stay and noting that the plaintiff in *Johnson* did not ask for a stay).

Moreover, "[t]he Seventh Circuit has repeatedly held that when arbitration is appropriate in the trial court's district, the proper course of action is to stay the proceedings rather than to dismiss them outright." *Hoenig.*, 2013 WL 5701400, at *5 (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002); *see also Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, No. 13 C 6485, — F. Supp. 2d —, 2014 WL 2795827, at *5 n.1 (N.D. Ill. June 17, 2014) (stating that "Seventh Circuit precedent and the overwhelming case law in this District . . . clearly demonstrate that staying the proceedings pending arbitration is the proper course of action"). Accordingly, because Williams-Bell affirmatively requested a stay, PJR's motion to dismiss based on improper venue is denied. The court will, instead, stay this action pending completion of proceedings before the arbitrator.

**B.     PJR's Motion to Compel Arbitration**

This brings the court to the final disputed issue: whether the court should limit arbitration to Williams-Bell's individual claims, or whether it should compel arbitration as to her individual claims and allow the arbitrator to decide whether her class claims are arbitrable. For

the following reasons, federal law governs this issue and the arbitrator may decide if the class claims are arbitrable.

1. **Choice of Law**

As noted above, the employment agreement signed by Williams-Bell provides that "[t]his agreement shall be interpreted and enforced in accordance with the law of the State of Michigan." Dkt. 12-1, Employment Agmt., § 9.1. Pointing to this choice of law clause, PJR contends that Michigan law governs the question of arbitrability. PJR represents, however, that Michigan law and the Federal Arbitration Act ("FAA") are identical in all material respects. Williams-Bell does not specifically address choice of law in her response to the motion dismiss but cites to authority applying federal law.

The FAA applies to agreements "involving" interstate commerce. *See* 9 U.S.C. § 2. The Supreme Court has held that the word "involving" must be interpreted broadly to mean any conduct that affects interstate commerce. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995). Williams-Bell's employment agreement appears to affect interstate commerce given the nature of PRB's business. *See Harper v. United Healthcare Corp.*, No. 97 C 4497, 1998 WL 673822, at *3 (N.D. Ill. Sept. 23, 1998). This brings the FAA into play. The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Generally, a contract's choice of law provision "will not extend to the arbitration clause, absent specific evidence the parties intended it to do so." *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, No. 13 C 06485, 2014 WL 2795827, at *3 (N.D. Ill. June 17, 2014)

(quoting *BEM I, L.L.C. v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *6 (N.D. Ill. Dec. 15, 2000). Thus, "the best way to harmonize [a] choice-of-law provision with [an] choice-arbitration provision is to read [the choice-of-law provision] to encompass substantive principles that [state] courts would apply, but not to include special rules limiting the authority of arbitrators." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995). Moreover, "[t]o the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws." *Wal-Mart*, 2014 WL 2795827, at *3 (citing *Preston v. Ferrer*, 552 U.S. 346, 360-63 (2008)).

The agreement in this case includes a choice of law provision that specifies that it shall be interpreted and enforced under the law of the State of Michigan. The agreement "does not contain language evidencing any intent of the parties to specifically opt out of the FAA in favor of [state law]." *Id*. Thus, the court will consider federal law interpreting the FAA when deciding the arbitrability issue presented by this motion (which, according to PJR, is a distinction without a difference since the outcome is the same under both Michigan and federal law).

### 2. Scope of Arbitration

The arbitration clause at issue in this case does not specify whether it applies to classwide claims. Specifically, as noted above, the arbitration clause provides, in pertinent part, that "in the event of a dispute between Contractor and PJR, such dispute shall be submitted for binding arbitration before the American Arbitration Association (AAA), and pursuant to the rules and guidelines of the AAA." Dkt. 12-1, Employment Agmt., § 9.2. PJR contends that the scope of

arbitration is a question for the court and asks the court to compel arbitration of Williams-Bell's individual claims only. Williams-Bell contends that the scope of arbitration is a question for the arbitrator. She thus asks the court to compel arbitration but leave the issue of arbitrability of the class claims to the arbitrator. Alternatively, she asks the court to compel arbitration of both her individual and class claims.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted). Generally, doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Nevertheless, "there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotations omitted, emphasis in original).

There are two types of arbitrability questions – substantive and procedural. Substantive arbitrability asks if the parties agreed to arbitrate a particular issue. *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 941 (N.D. Ill. 2012). Questions of substantive arbitrability are usually reserved for the court. *Id*. Examples are "a gateway dispute about whether the parties are bound by a given arbitration clause" or "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84. In contrast, procedural arbitrability refers to "disputes concerning prerequisites and conditions precedent to arbitration; allegations of waiver, delay, or other similar defenses to arbitrability;

the preclusive effect of state court judgments; and the construction of the contract language itself." *Price*, 908 F. Supp. 2d at 941. Arbitrators decide these types of questions. *Id.*

With this in mind, the court turns to whether it should decide if the putative class claims in this case are arbitrable or if an arbitrator should decide this question. The Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health Plans v. Sutter*, — U.S. —, 133 S.Ct. 2064, 2068 (2013). The Seventh Circuit has not weighed in on this question, which has divided judges in this district. The majority position is that questions about classwide arbitration are procedural and thus are properly left to an arbitrator. *See Price*, 908 F. Supp. 2d at 941 (Castillo, J); *Kovachev v. Pizza Hut, Inc.*, No. 12 C 9461, 2013 WL 4401373, at *2 (N.D. Ill. Aug. 15, 2013) (Tharp, J.); *Cramer v. Bank of Am., N.A.*, No. 12 C 8681, 2013 WL 2384313, at *3-4 (N.D. Ill. May 30, 2013) (Zagel, J.); *Chatman v. Pizza Hut, Inc.*, No. 12 C 10209, 2013 WL 2285804, at *6-8 (N.D. Ill. May 23, 2013) (Schenkier, J.); *State Farm Fire & Cas. Co. v. Pentair, Inc.*, No, 11 CV 06077, 2012 WL 3904104, at *2-4 (N.D. Ill. Sept. 7, 2012) (Chang, J.); *Collier v. Real Time Staffing Servs., Inc.*, No. 11 C 6209, 2012 WL 1204715, at *5 (N.D. Ill. Apr. 11, 2012) (Lefkow, J.); *see also W.C. Motor Co. v. Talley*, — F.Supp. 2d —, No. 12 C 2307, 2014 WL 3882489, at *2 (N.D. Ill. Aug. 7, 2014) (Feinerman, J.) (noting that the question of whether a court must decide if a contract permits class arbitration is an "open question" but resolving a motion to dismiss on other grounds); *Guida v. Home Savings of Am., Inc.*, 793 F. Supp. 2d 611, 618 n.2 (E.D.N.Y. 2011) (summarizing a nationwide review of district court decisions holding that "the ability of plaintiffs to arbitrate on a class basis is an issue to be determined by the arbitrator").

The court believes that Judge Castillo's opinion in *Price* best illustrates the majority position in this district. 908 F.Supp. 2d. at 940-45. In *Price*, Judge Castillo recognized that neither the Supreme Court nor the Seventh Circuit had decided if the question of class arbitration was one of procedural arbitrability to be decided by an arbitrator or one of substantive arbitrability to be decided by a court. He began by reviewing Supreme Court precedent relating to arbitrability. *See Howsam*, 537 U.S. at 84-85; *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (plurality opinion); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*, 559 U.S. 662 (2010); *AT & T Mobility LLC v. Concepcion*, — U.S. —, 131 S.Ct. 1740, 1745 (2011). As Judge Castillo noted, *Bazzle* was directly on point as a plurality of the Justices in that case decided that the arbitrability of class claims was a question of procedural arbitrability that should be decided by an arbitrator, not a court. *Price*, 908 F.Supp. 2d at 940 (citing *Bazzle*, 539 U.S. at 452-53). However, "[b]ecause there was no majority opinion, *Bazzle* left open the question of whether a court or an arbitrator should determine the arbitrability of class claims." *Id*. at 940-41.

Judge Castillo then considered two Seventh Circuit cases that addressed the arbitrability of class claims in the analogous context of consolidated arbitration, which "resembles consolidated litigation in that it involves two or more oases that share common questions of law or fact being decided in a single proceeding." *Chatman*, 2013 WL 2285804, at *8. First, in *Empl's Ins. Co. of Wausau v. Century Indem. Co.*, the Seventh Circuit held that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve." 443 F.3d 573 (7th Cir. 2006). Second, in *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, the Seventh Circuit held that arbitrators may interpret an arbitration agreement contract to decide if it permits consolidated arbitration. 671 F.3d 635 (7th Cir. 2011).

Judge Castillo found that these decisions, plus Judge Lefkow's decision in *Collier*, 2012 WL 1204715, at *5, and Judge Chang's decision in *Pentair*, 2012 WL 3904104, at *3, supported the conclusion that deciding if an arbitration agreement encompasses arbitration of class claims is a question for the arbitrator. *Price*, 908 F. Supp. 2d at 944-45.

Judge Castillo was also persuaded by the fact that the arbitration agreement at issue in his case (like the one at issue in the case before this court) explicitly adopted the American Arbitration Association ("AAA") Commercial Rules and thus implicitly adopted the AAA's Supplementary Rules for Class Arbitrations. *See id*. at 945. "AAA Supplementary Rule 3 explicitly states that 'the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.'" *Id*. (quoting AAA Supp. R. 3 (Oct. 8, 2003)). He concluded that the parties' consent to the AAA's rules meant that they had agreed to allow an arbitrator to decide whether to arbitrate class claims. *Id*. (collecting cases holding that an agreement to follow the AAA's rules includes an agreement to arbitrate class claims).

This court believes that the decision in *Price* is thorough, well-reasoned, and correct. Based on Seventh Circuit precedent addressing consolidated arbitration and given that the arbitration agreement in this case states that covered disputes "shall be submitted for binding arbitration before the American Arbitration Association (AAA), and pursuant to the rules and guidelines of the AAA," Dkt. 12-1, Employment Agmt., § 9.2, the court finds that an arbitrator is the proper person to decide whether the arbitration agreement covers class claims.

In the interests of completeness, the court notes that it is not persuaded by three decisions in this district concluding that the court must decide if class claims are arbitrable. *Watkins v.*

*New Koosharem Corp.* involved a plaintiff who consented to a background check in connection with an employment application. No. 11 C 5210, Dkt. 37 (N.D. Ill. Mar. 9, 2012 (unpublished order) (Zagel, J.). After the plaintiff did not secure the job due to inaccurate information in his background check, he filed a Fair Credit Reporting Act case styled as a class action against the entity responsible for the background check. The defendant moved to compel arbitration based on a clause in the consent form provided by the potential employer that authorized the background check. The court granted this motion in open court. The plaintiff filed a motion to reconsider, arguing that the arbitration agreement was unenforceable because the defendant was not a party to it and because compelling arbitration would prevent him from pursuing class claims. The court granted the motion to reconsider, explaining in a brief order that "after a more careful review of the arbitration clause I see it is silent as to class disputes, and I cannot infer an implied agreement to submit class claims to arbitration." *Id*. In a subsequent and thorough opinion, however, Judge Zagel decided the arbitrability issue in conformity with the majority view. *See Cramer*, 2013 WL 2384313, at *3-4.

*Corrigan v. Domestic Linen Supply Co., Inc.*, No. 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) (Gettleman, J.), and *Goodale v. George S. May Intern. Co.*, No. 10 C 5733, 2011 WL 1337349 (N.D. Ill. Apr. 5, 2011) (Hibbler, J.), both concluded that the arbitration clauses were silent as to class arbitration because they did not expressly reference this topic. The two decisions relied heavily on *Stolt-Nielsen*, 559 U.S. at 676-77, which addressed the scope of an arbitrator's powers.

Specifically, in *Stolt-Nielsen*, the Court considered whether an arbitration panel's construction of an arbitration clause exceeded the panel's powers. The parties in *Stolt-Nielsen*

stipulated that the arbitration agreement at issue was "silent" regarding the availability of classwide arbitration. *Id*. The Supreme Court discussed the plurality decision in *Bazzle* and stated that "only the plurality" in *Bazzle* decided that "an arbitrator, not a court, [must] decide whether a contract permits class arbitration." *Id*. at 680. It declined to revisit that question "because the parties' supplemental agreement expressly assigned this issue to the arbitration panel, and no party argue[d] that this assignment was impermissible." *Id*. Similarly, based on the parties' agreement that the arbitration agreement was silent as to class claims, the court had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Id*. at 687 n.1. This court finds that *Stolt-Nielsen* does not answer the question presently before it.

Subsequently, in *Concepcion*, the Supreme Court grappled with a preemption issue relating to consumer contracts containing waivers limiting the ability to pursue collective actions. 131 S.Ct. at 1745-46. The Court acknowledged that arbitration is meant to streamline proceedings but that classwide arbitration "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id*. at 1751.

*Stolt-Nielsen* and *Concepcion* are the two latest Supreme Court cases relating to arbitrability of classwide claims. At best, "the Supreme Court has not issued binding precedent" addressing who decides if class claims are arbitrable "but has provided guideposts for the [c]ourt's consideration. In particular *Bazzle*, although non-binding, suggests that the arbitrator should decide the availability of class arbitration, whereas *Stolt–Nielsen* and *Concepcion* caution

that classwide arbitration and individual arbitrations are very different procedures." *In re A2P SMS Antitrust Litig.*, No. 12 CV 2656 AJN, 2014 WL 2445756, at *7 (S.D.N.Y. May 29, 2014).

Consistent with Judge Castillo's reasoning in *Price*, the court concludes that in resolving this conundrum, the Seventh Circuit's decision in *Wausau* regarding arbitration of consolidated claims is particularly helpful. 443 F.3d at 577. As noted above, in *Wausau*, the arbitration clause did not expressly address consolidated arbitration. *Id*. The Seventh Circuit acknowledged *Bazzle* but declined to rely on it because it was a plurality opinion. *Id*. It then concluded that arbitrability of consolidated claims was a procedural issue reserved for the arbitrator. *Id*.

In *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.,* 671 F.3d 635, 637 (7th Cir. 2011), the Seventh Circuit reaffirmed *Wausau* and rejected the argument that consolidated arbitration can proceed only if the parties expressly consent, explaining:

> The subject was before the Supreme Court in [*Bazzle*], but that case did not produce a majority. The plurality opinion (Breyer, J., joined by Scalia, Souter, and Ginsburg, JJ.) concluded that arbitrators are entitled to make the initial decision about whether class arbitration has been authorized. 539 U.S. at 450-54. Chief Justice Rehnquist, joined by Justices O'Connor and Kennedy, thought that a court should make the initial decision. *Id*. at 456-60. Justices Stevens and Thomas participated but did not address the question. *Stolt-Nielsen* did not do so either. This leaves in place our post-*Bazzle* decision in *Wausau*.

*Id*. at 639. Eventually, the Seventh Circuit might provide more clarity about who decides if class claims are arbitrable. For the time being, however, the court joins the majority position, which is supported by *Wausau* and *Blue Cross*, that this question is one of procedural arbitrability decided by an arbitrator.

The court also notes that in *Goodale* – one of the cases adopting the minority position – the court held that given the parties' agreement that the AAA's rules would apply, "an arbitrator

should decide the scope of arbitrability." 2011 WL 1337349, at *2. Critically, the *Goodale* court did not mention AAA Supplementary Rule 3, which provides that an arbitrator must decide if an arbitration clause encompasses class claims. Instead, it stated that the plaintiffs did not "seriously suggest that the [arbitration] agreement is anything but silent with respect to class arbitration." *Id*. Supplementary Rule 3 is in tension with this statement. For this additional reason, the court respectfully finds that *Goodale* is unpersuasive. *See Guida*, 793 F. Supp. 2d at 618 n.6 (distinguishing *Goodale* because the plaintiffs contended that the arbitration agreement was silent regarding the arbitrability of class claims" and the court did not address the impact of the AAA rules).

### III. CONCLUSION

PJR's motion to dismiss or to compel arbitration [11] is granted in part and denied in part. Specifically, PJR's motion to dismiss based on the lack of subject matter jurisdiction and improper venue is denied. The court, however, compels arbitration of Williams-Bell's individual claim. It further finds that the arbitrator may decide if the class claims are arbitrable. Finally, it stays this case pending completion of arbitration proceedings.

Date: January 8, 2014                     /s/
                                          Joan B. Gottschall
                                          United States District Judge